JAMES R. WHYTE and DAVID C. WHYTE, Appellants, *v.* THE BUILDERS' LEAGUE of New York, Respondent.

*Conveyance of two lots by metes and bounds, the division line running through the center of a building — no easement for the support of the building will be implied — an equitable action which has failed in its entire scope will not be retained in order to award damages.*

Two lots of land, upon the rear of which three frame buildings were constructed, the middle building extending eight feet over each lot, so that the division line between the two lots extended through the center of it, were conveyed to different persons, for the purposes of partition among themselves, by the heirs at law of the original owner, by two conveyances by metes and bounds, the division line of the lots running through the middle of the middle frame building.

*Held,* that no easement for the maintenance of the middle house being expressly reserved in the conveyances in favor of either of the grantees, no such easement would be implied.

*Semble,* that no cause of action for damages is made out in favor of the owners of one of the lots as against a grantee of the other lot, because of the removal of that portion of the middle house which stood upon the latter's lot, the house having been cut through by his grantor.

Where an action in equity fails as an equitable action in its entire scope, the court is not bound to retain it for the purpose of ascertaining if any damage

was sustained by the plaintiff by reason of any act of the defendant, no request so to do having been made upon the trial, and the case having been submitted to the court for its decision as an equity case.

APPEAL by the plaintiffs, James R. Whyte and another, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 10th day of May, 1898, upon the decision of the court rendered after a trial at the New York Special Term.

*Charles D. Ridgway,* for the appellant.

*Rudolf Dulon,* for the respondent.

INGRAHAM, J. :

One Crawford, being the owner of two lots of land on the south side of One Hundred and Twenty-sixth street, between Fifth and Sixth avenues, built upon the rear of the lots three frame buildings, the middle building being upon eight feet of each lot, and the division line between the two lots extending through the center of the building. These three buildings were covered by the same roof, with partitions separating the middle building from the other two. The entrance of the middle house was upon the easterly lot, and a chimney for the use of those occupying the middle house was built on the line between the two lots. A common sewer for the three houses ran along the dividing line of the two lots to the street, and the water supply for the middle house came from the pipe in the street passing through the westerly lot. These three houses, being thus erected upon two lots, remained in the possession of Crawford until his death in the year 1874. He died intestate, leaving six children, his heirs at law. The heirs at law partitioned the property among themselves, and united in a conveyance by which these two lots, with the buildings thereon, were vested in three of Crawford's children as tenants in common. Subsequently, by two conveyances between the three heirs in whom these two lots had vested, the westerly lot was conveyed by metes and bounds, the dividing line of which ran through the middle of the middle frame house, to Jessie Whyte, one of the owners of the two lots, and the easterly lot, by like deed, was conveyed to Barbara Ewan, another

of the owners of these two lots. The dividing line between the two lots, namely, the easterly line of the lot conveyed to Jessie Whyte, and the westerly line of the lot conveyed to Barbara Ewan, divided the middle of the frame houses in the center, leaving one-half of such frame house upon each of the lots conveyed. The deeds were substantially alike, except the description of the property and the names of the grantors and grantees, and were full covenant warranty deeds. These three houses appear to have been erected as one building. There were no independent walls between the easterly or westerly of the three houses and the middle house, the division being merely lath and plaster partitions. From the time of these conveyances down to a short time prior to the commencement of the action, the two grantees in these deeds appear to have occupied the middle house in common, renting it and dividing the rents. Shortly before July 7, 1897, the middle of these three houses was cut through on the line dividing the two lots, leaving the chimney which had been used for the middle house standing upon the line; and on July 7, 1897, Barbara Ewan conveyed the easterly lot to the defendant. Prior to the conveyance of this easterly lot to the defendant, the plaintiffs notified the defendant that they claimed the right to use, occupy and enjoy, during their lives, the upper story of the building now standing partly on the easterly lot and known as 76 West One Hundred and Twenty-sixth street. Subsequently the defendant went into the possession of the premises and tore down the easterly portion of the building, including the part of this middle house on its land, removing all of the chimney which was upon this lot, and erected a substantial building on the lot, the westerly wall of that building standing on the line dividing the two lots. The plaintiffs then built a wall upon the easterly side of their portion of the middle house and made new connections with the sewer and the water pipes in the streets, at an expense of something over $600. The property was taken possession of by the defendant on July 7, 1897, who commenced the excavation for the new building in the latter part of July or the early part of August. The separation between the two halves of the middle building after it was cut apart was about six inches.

On August 9, 1897, this action was commenced. The complaint alleges the ownership by Crawford of these two lots; that Craw-

ford erected these three frame houses upon the rear of the lots; the death of Crawford; the conveyance by his heirs at law by which the title to the westerly lot was vested in the plaintiffs' mother, and to the easterly lot in the defendant's grantor, and the conveyance of the easterly lot to the defendant; and further alleges that the defendant had pulled down the easterly part of the middle house and was depriving the plaintiffs of the lawful use and occupation of their premises, to their damage $5,000; and the complaint demands judgment against the defendant for treble that sum; that the defendant may be compelled to restore the said house to its original condition; that it may be perpetually enjoined and restrained from interfering with the use and occupancy thereof by these plaintiffs as it has hitherto been used and occupied by them; that the plaintiffs may be paid their said damages, and that they may have judgment therefor against the defendant, besides the costs of this action, or for such other or further relief as may be just.

The action was in equity, and was commenced after the middle house had been cut in two and the easterly part of it removed from the premises. It is not disputed that before the conveyance was made to the defendant this middle house had been cut in two, substantially destroying it as a house, and that all the defendant did was to remove from the property which he had bought and to which he had a good title, the portion of what had been the middle house upon the property. The defendant was not liable for the injury that had been sustained by the plaintiffs in consequence of this cutting off of the portion of the house upon the easterly lot from that portion which remained on the westerly lot, as, from the evidence, that destruction of the house took place before the defendant acquired title to the property, and with that, so far as appears, it had nothing to do. With this severance of the portion of the house upon the defendant's property from that upon the plaintiffs' property, the house, as a house, ceased to exist, and for whatever injury the plaintiffs sustained because of this severance of the two parts of this house, the plaintiffs must look to the person who committed the wrong, if wrong was committed. The complaint does not allege that the plaintiffs acquired an easement to which any portion of the easterly lot was subject, nor is it apparent

just what easement or right the plaintiffs could have to occupy adjoining property to which they had no title. There was no question here of a party wall, or the right of support of any portion of the plaintiffs' property. The conveyance to the defendant's grantor, in which plaintiffs' predecessor in title joined, was an absolute conveyance in fee of this easterly lot bounded by a line which divided the middle house in the center, and such conveyance warranted to the defendant's grantor the title to that lot with all the buildings thereon and appurtenances thereto. The boundary of the lot thus conveyed by the plaintiffs' predecessor to the defendant's grantor ran through the center of this house, but there was no reservation in the deed giving to this property any right of support or any easement to which the granted property was appurtenant. There is nothing in these two deeds taken together by which the plaintiffs' predecessor in title and the defendant's grantor divided these two lots, vesting one lot in one and the other in the other, which could imply a reservation of an easement to which either of the lots was subject. The deeds are dated on the same day, and seem to have been executed and delivered simultaneously, for the purpose of dividing these two lots between those who formerly owned them as tenants in common.

A different question would have been presented if one person who was the owner of both lots had conveyed one of the lots to a third party, and where the granting of an easement to such third party, to which the lot retained was subject, was necessary to the enjoyment of the property conveyed, as it existed at the time of the conveyance. The plaintiffs' right, if such right exists, must depend upon an implied covenant in the deed granting the lot to the plaintiffs' predecessor in title, and we think that none can be implied from a conveyance upon a division of two lots between tenants in common, where the deeds dividing these two lots are executed and delivered simultaneously, and where it would appear that the intent was to separate the ownership of what had before been held in common, so as to vest in each tenant in common an individual title to a portion of the land held in common.

This construction of these deeds is sustained by the case of *Griffiths* v. *Morrison* (106 N. Y. 168). In that case the deed from the plaintiff to the defendant's grantor conveyed a lot by metes and bounds.

Upon the lot conveyed, and upon five feet of land on an adjoining lot which belonged to the grantor, there was erected a building, and the defendant claimed to have the right, in the nature of an easement, to retain possession of this strip of five feet, although not embraced within the description, because the house on the rear lot was built extending five feet over the lot adjoining it to the east, by the person who was at the time the owner of both lots. In deciding that case the court say : " The description in the deed of the amount of the land conveyed is minute and definite, even to a half inch, and the deed conveys ' the buildings and improvements thereon.' Does this language include the right to retain possession of this five feet in controversy while that western extension wall endures, and to use such wall as the eastern extension wall of the defendant's house ? It is the building and improvements *on the land* which is most accurately and minutely described that are conveyed. There is no suggestion of mistake of measurement in the amount of land intended to be conveyed, and yet a piece of land, five feet in addition to that which was actually conveyed, and out of a total of only twenty-two feet, is thus called for to furnish this easement to defendant's premises. We think that the language conveys only that part of the building which is on the land described, and that no right, such as is claimed by the defendant, exists upon or in relation to the land not conveyed, and which belongs to the plaintiff. Such, we think, is the clear intention to be deduced from the language used and from the situation of the parties." We think that this applies to the case at bar, and that it was the intention of the parties, upon the execution and delivery of these partition deeds, to vest in the grantee in each deed the lot of land, with the buildings thereon erected, free from any easement appurtenant to adjoining premises.

The action being in equity, and having failed as an equitable action in its entire scope, the court was not bound to retain it for the purpose of ascertaining if any damage was sustained by the plaintiffs by any act of the defendant. No such request was made upon the trial, and the case having been submitted to the court for decision as a case in equity, when the right to any equitable relief failed, the court was justified in dismissing the complaint. We do not, however, wish to intimate that there was any cause of action for damages made out in favor of the plaintiffs against the defendant on

the trial.   We think there was none, for, as before stated, whatever injury was occasioned to the plaintiffs was by the cutting in two of the houses prior to the conveyance to the defendant, and for which the defendant was not responsible.

It follows that the judgment appealed from was right and it is affirmed, with costs.

VAN BRUNT, P. J., PATTERSON, O'BRIEN and McLAUGHLIN, JJ., concurred.

Judgment affirmed, with costs.