[No. 8329. Department One. November 10, 1909.]

JOHN JEMO et al., *Respondents*, v. TOURIST HOTEL COMPANY, *Appellant*.[1]

APPEAL—NOTICE—TIME FOR TAKING. Where judgment was rendered February 3, and filed the next day, a notice of appeal and appeal bond served and filed May 3, is within the ninety days provided by Bal. Code, § 6502.

SAME—WHEN TIME BEGINS TO RUN—ENTRY OF JUDGMENT—NEW TRIAL. Where, after a judgment on a verdict, a motion for a new trial is denied and a new judgment entered on motion of the successful party, he is estopped to deny that the latter is the final judgment, and it vacates the former, and time for taking an appeal begins to run from that time.

LANDLORD AND TENANT—LEASE — APPURTENANCE — IMPLIED EASEMENT—SIDE ENTRANCE. Where a lease of a room for a restaurant, in a hotel building, which had a front entrance on the street, and a side entrance into the lobby of the hotel which was a convenience but not necessary to the beneficial use of the property, the side entrance is not an appurtenance and there is no implied easement rendering the landlord liable in damages for closing the same.

DAMAGES — TO LEASED PREMISES — APPROXIMATION — EVIDENCE— SUFFICIENCY. Damages need not be shown with precision and accuracy, and a verdict for $250 for damages to leased premises, by reason of negligence of the landlord in repairing a building, is not unsupported or based on conjecture, where the walls were injured and the place of business closed while tenants made repairs, at an expense estimated by them at five or six hundred dollars.

[1]Reported in 104 Pac. 820.

Appeal from a judgment of the superior court for King county, Albertson, J., entered February 4, 1909, upon the verdict of a jury rendered in favor of the plaintiffs, in an action for damages. Modified.

*Hughes, McMicken, Dovell & Ramsey*, for appellant.
*John E. Ryan* and *C. K. Poe*, for respondents.

Gose, J.—The appellant owns and conducts the Tourist hotel, situate on the corner of Occidental avenue and Main street, in the city of Seattle, and fronting on Occidental avenue. On April 1, 1905, its predecessors in title leased to respondents, for the term of three years, a room to be used as a restaurant, on the ground floor of the hotel building, adjoining the rotunda of the hotel and connected therewith by a doorway, and fronting and having its entrance on Main street. It was described in the lease as "the room situated on the ground floor of 156 Main street." The respondents entered into the possession of the leased premises and began and continued to conduct a restaurant therein, with the slight interruption hereafter noticed, until the expiration of the lease.

In November, 1906, the appellant closed the doorway between the hotel rotunda and the restaurant. After the expiration of the lease, the respondents commenced this action, seeking to recover damages on two counts. The first cause of action is predicated on the loss of patronage arising from the closing of the door between the hotel rotunda and the restaurant. The second cause of action proceeds from certain alleged injuries to the interior of the restaurant, caused by the appellant in repairing and changing the hotel building. The appellant demurred to the first cause of action, upon the ground that it does not state facts sufficient to constitute a cause of action. The demurrer being overruled, issue was joined and the cause tried to a jury, resulting in a verdict for respondents on both causes of action, upon which a judgment was entered, from which this appeal was taken.

At the close of the case, the appellant moved the court to instruct the jury that there could be no recovery.

The respondents have moved to dismiss the appeal, because the appeal bond was not given or filed within five days after the service and filing of the notice of appeal, nor within ninety days after the motion for a new trial was denied. The record shows that the verdict was filed January 13, 1909; that a motion for a new trial was filed January 15, denied January 30, and a judgment rendered upon the verdict on the motion of the respondents February 3, and filed February 4. The notice of appeal and the appeal and supersedeas bond were served and filed May 3. Upon the record this appeal was taken within the ninety days provided by law. Bal. Code, § 6502 (P. C. § 1050). However, the respondents assert that the clerk at once entered a judgment as provided by law (Laws 1903, p. 285, § 1) ; that on February 9 the notice of appeal was filed and a defective bond filed the following day ; that the second notice of appeal and the appeal bond were served and filed more than ninety days after the denial of the motion for a new trial, but within ninety days after filing the last judgment. We will assume the record to be as the respondents state, and the question then presented by the motion is, whether the time for taking an appeal commenced to run on January 30 when the motion was denied, or on February 4 when the last judgment was entered. If the appeal was from the judgment entered by the clerk, then it should be dismissed for two reasons: (1) Because not taken within ninety days from the denial of the motion; (2) because the notice of appeal states that it is taken from the judgment entered February 4.

We have seen that the last judgment recites that it was rendered on the motion of the respondents. In *Herzog v. Palatine Ins. Co.*, 36 Wash. 611, 79 Pac. 287, we held that, when the respondent caused the later judgment to be entered, he estopped himself from asserting that it was not the final appealable one. However, the respondents

assert that a different view was taken in the later case of *Chilcott v. Globe Nav. Co.*, 49 Wash. 302, 95 Pac. 264. In this case the clerk entered a judgment on the day the verdict was returned. Thereafter a motion for a new trial was denied. One month later a judgment was entered at the instance of the losing party. We held that the defeated party could not extend the time for taking an appeal by having a subsequent judgment entered. It was not the intention of the court to modify the rule announced in the *Herzog* case, as is shown by the reasons stated in the opinion and the fact that the case was not referred to. We think that, where a judgment has been entered by the clerk and later a motion for a new trial made and denied and a new judgment entered by the court upon the motion of the successful party, he is not only estopped to deny that it is the final judgment, but that in effect it vacates and supersedes the former judgment. The motion is therefore denied.

Upon the first cause of action, we find that the lease did not in terms include the right to use the door between the rotunda of the hotel and the restaurant. If the right exists at all, it arises by necessary implication. We have seen that the restaurant fronted, and had its entrance, on Main street. A right of way by implication arises only from necessity and never from convenience. If it exists in the instant case, it must rest upon the fact that the doorway was necessary to the beneficial use and enjoyment of the demised premises. It is urged that the closing of the door lost the respondents a considerable patronage which had theretofore passed from the lobby of the hotel into the restaurant, furnishing a substantial part of respondents' business, and that appellant is liable in damages for this loss. Stated in the fewest words, the contention means that the respondents had a right of way through the door, into and through the lobby of the hotel, and through its main entrance as well, as an easement appurtenant to the restaurant, and that the appellant was required to maintain and operate the hotel as a hotel during

the life of the lease. The full effect of the respondents' position is that the hotel was a servient estate, and that the appellant owed them an implied duty to carry on a hotel business so as to furnish them customers, without regard to the effect upon it or its property, for the loss alleged was that they no longer received the patronage of the guests of the hotel.

It would seem that the bare statement of the contention demonstrates its fallacy. If the appellant is liable in damages for closing the door in question, it would have been liable if it had closed the front door. That the doorway was a convenience to respondents none will deny, but it was not necessary to the beneficial enjoyment of the property, and was therefore not an appurtenance. While not stated in direct terms in any of the cases, the doctrine of an implied easement is founded on the intention of the parties, not expressed, but to be gathered from all the surrounding circumstances. If the right claimed is necessary to the enjoyment of the property as contradistinguished from beneficial, it will be implied. Applying this principle to the case at bar, it becomes clear that the landlord did not intend to make the hotel servient to the restaurant. Cases may arise in which the question of an appurtenance is one of mixed law and fact, but in this case it is clearly one of law. The respondents urge that the court would have been justified, as a matter of law, in instructing the jury that the doorway was necessary to the beneficial use of the property, and that therefore it was included in the lease as an appurtenance to the restaurant. We agree with them that the determination of the question was one of law, but disagree with them as to the further part of their contention. Our view is supported by the following cases: *Ward v. Robertson*, 77 Iowa 159, 41 N. W. 603; *Walker v. Clifford*, 128 Ala. 67, 29 South. 588; *Cummings v. Perry*, 169 Mass. 150, 47 N. E. 618, 38 L. R. A. 149; *Gale v. Heckman*, 16 Misc. Rep. 376, 38 N. Y. Supp. 85; *Patterson v. Graham*, 140 Ill. 531, 30 N. E. 460; *Oliver*

v. Dickinson, 100 Mass. 114; Hill v. Shultz, 40 N. J. Eq. 164; Barrett v. Bell, 82 Mo. 110, 52 Am. Rep. 361; Howell v. M'Coy, 3 Rawle 255; In re Mayor of New York, 83 App. Div. 513, 82 N. Y. Supp. 417.

In the Walker case, the owner of certain property leased to another a part of it, known as the Florence Hotel building, including the hotel rotunda therein, for occupancy as a hotel, excepting therefrom certain stores in the building. Prior to the lease, he had leased to another certain portions of the building, including the saloon and billiard hall, agreeing that all doors between the hotel and the last described property should be kept open for the use of the latter lessee. The hotel building was built especially for hotel purposes, and the saloon and billiard hall were accessible from the hotel rotunda by means of doors. A door opened from the saloon to the street, and the billiard hall could only be reached by passing through the saloon or the hotel corridor, and only through the latter when the former was closed. The lessee of the saloon and the billiard hall asserted that the lessee of the hotel took the lease with knowledge of such facts and subject to an easement, and sought to enjoin the latter from closing the doors leading from the rotunda into the billiard hall. A temporary injunction was granted, and later was dissolved on the ground that no easement or right of way had been reserved by implication or otherwise. On appeal the decree was affirmed, on the ground that the facts did not disclose an implied easement. The court said that the saloon and billiard hall were easily accessible from the street, and that the way claimed was not a way of necessity but merely of convenience, and that an implied easement could only arise from necessity.

In the Ward case, certain wholesale druggists had leased the north part of a block fronting on a street in which to carry on their business. The lessor owned the entire block, the south side of which was bounded by another street, upon which there was a line of railroad and which had been leased

to another.   The lessees of the north rooms claimed a right
of way through the south room to the railroad street, for the
purpose of unloading freight and carrying it through the
south room, thence through a doorway leading to their place
of business, as an easement appurtenant to the use of their
property.   The court held that the right claimed was only
a convenience, and not necessary to the beneficial use and en-
joyment of their property, and that it could not arise by
implication.

In the *Gale* case, the plaintiff had let to the defendant an
apartment on the second story of a building, known as the
Hotel San Remo.   At the time the lease was made, the lessor
carried on a restaurant in the same building with the demised
apartment, but the lease was silent as to the restaurant.   The
lessee vacated and refused to pay rent, because the restaurant
had deteriorated in appointments, management, and purvey-
ance.   Upon the trial, evidence tending to show the existence
of the restaurant and its deterioration was admitted.   Upon
appeal it was held that the evidence was incompetent and
irrelevant, and the judgment was reversed.

The respondents cite and rely upon *Lindbloom v. Berk-
man*, 43 Wash. 356, 86 Pac. 567 ; *Snow v. Pulitzer*, 142 N.
Y. 263, 36 N. E. 1059, and *Kitchen Bros. Hotel Co. v. Phil-
bin* (Neb.), 96 N. W. 487.   In the *Lindbloom* case, the
appellants leased to the respondents the second, third, and
fourth floors of a building located at the corner of Occidental
avenue and Washington street in the city of Seattle, to be
used as a hotel and rooming house, reserving the right in
the lessors to change, alter, or repair the stairway leading
to the leased premises on Occidental avenue.   The only en-
trance to the leased premises was one from Occidental avenue
through a large and attractive hall to the elevator.   At the
time of the execution of the lease the hall was unoccupied,
but thereafter the appellants let a part of the hallway to a
huckster who, over the objection of the respondents, entered
therein with his wares and greatly impeded the ingress and

egress to and from the leased premises. Later they changed
the stairway, moving it from near the center of the hallway
to one side, and from time to time thereafter leased the space
thus made to hucksters and dealers in cheap wares, and left
them in possession until forbidden by an injunctive order of
the trial court. This court held that, while the hall was not
a part of the second, third and fourth floors, it was the only
means of going to and from them, and that it passed as an
appurtenance to the property leased.

In the *Snow* case, a party erected a seven-story building
in the city of New York. Subsequently another person
erected an adjoining four-story building, and still later
another owner erected another adjoining building; thus mak-
ing three buildings in one block, each having independent
walls. Subsequently the first builder acquired the three
properties and converted them into a hotel called French's
hotel, the three being used together as one building. There-
after the owner of the entire property leased the first story
of the four-story building, and then conveyed the entire
property, describing it as French's hotel, subject to the
lease. Thereafter the owner tore down the four upper
stories in the seven-story building, when it was found that
the wall of the four-story building was supported by the ad-
joining wall of the seven-story building, and that it could
not stand without such support, and it began to crack and
break and there was imminent danger of its falling. Upon
discovering this fact the owner discontinued the work.
Thereafter the four-story building was condemned by the
city, torn down, and the tenant was deprived of the benefit
of his lease and ousted from the property. In an action for
damages the owner contended that the tenant was not en-
titled to have the building in which his store was situated
supported by the adjoining wall of the seven-story building;
that there was no easement in that wall for the support of
the wall of the four-story building. It was held that, if the
wall of the four-story building could not stand of itself, then

the tenant was entitled to the support of the wall of the seven-story building; that the two walls constituted the wall of the leased building, and that the owner had no right to remove the support so as to drive the tenant from his store; that he had no more right to remove the supporting wall than he would have to tear down the demised building or remove its roof.

These cases do not, in our opinion, support the respondent's contention. In the *Kitchen Bros. Hotel Co.* case it was held that, where the owner of a hotel leased a storeroom upon the ground floor of the hotel building to be used as a ticket broker's office, the room fronting upon and having a front door opening on a street, and also a back door opening into a hall leading to the hotel rotunda, the closing of the latter door by the lessor was a breach of the implied covenant for quiet enjoyment, and rendered him liable in damages. We cannot yield our assent to the view announced in this case, and it is not in harmony with the other authorities to which reference has been made. We think the court overlooked the vital distinction between a necessity and a convenience. As was said in *Hill v. Schultz*, 40 N. J. Eq.164:

"Since the parties did not adjudge it important enough to contract respecting the use of this platform in plain terms, is the necessity so strong as to make the demands appear reasonable?"

We think not. The guests of the hotel could, by passing through the main hotel entrance into Occidental avenue and around the corner a few steps, enter the respondent's restaurant. The first cause of action must therefore fail.

Passing to a consideration of the second cause of action, we find that the respondents' evidence tended to show that the appellant, in repairing the hotel, tore up the floors, tore the paper on the ceiling and the walls, and broke the plastering of the restaurant to such an extent that it became necessary for them to close the restaurant for a period of about seventeen days, and repair the interior at an expense of five or six hundred dollars. The respondents did not produce

any of the bills pertaining to the repairing, but estimate the expenses as stated.   The verdict was for $250 on this cause of action.   The appellant urges that the verdict was based on speculation and conjecture, and that there is no substantial evidence to support it.   "Damages," briefly defined, means compensation for the legal injury.   It is a word easy to define, but often exceedingly difficult of application.   Whilst it is true that a verdict for damages must not rest upon speculation or conjecture, it is likewise true that damages need not be shown with precision and accuracy, but approximately.   *Kruegel v. Kitchen,* 33 Wash. 214, 74 Pac. 373. The testimony of the respondents makes it reasonably certain that the walls and floor of the restaurant were damaged by the negligence of the appellant, and it will not be permitted to escape liability because the amount of the damage or the cost of the repairs cannot be stated with exactness.   It suffices if the loss sustained can be reasonably estimated from known or approved data.   The respondents repaired the entire floor and walls at an expense of about $1,100.   They estimated that about one-half of this expense was required on account of the acts of the appellant.   Had they produced the bills they would only have shown the expense as an entirety.   The part for which the appellant should compensate them would still be provable only by estimate and comparison.   The accounts have been lost.   Not taking into account the damages claimed for loss of profit on the business, which has no basis in the evidence stronger than conjecture, we think there is sufficient evidence in the record to support the verdict on the second cause of action.

The judgment will be modified, and the cause remanded with directions to the trial court to enter a judgment for the respondents for $250, with interest from the date of such judgment.   The appellant will recover its costs.

Rudkin, C. J., Chadwick, and Fullerton, JJ., concur.

Morris, J., took no part.